**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SINCE 1903, INC., <br><br>     **Plaintiff,** <br><br>   **v.** <br><br> TMS INTERNATIONAL, LLC, <br><br>     **Defendant.** | **Case No. 22–cv–00014–ESK–MJS** <br><br><br>       **OPINION** |

**KIEL, U.S.D.J.**

This matter arises from defendant TMS International, LLC's (TMS) sale of electric arc furnace (EAF) slag. The EAF slag allegedly caused popouts in finished pavers and resulted in customer complaints, warranty claims, and other losses, for which plaintiff Since 1903, Inc. seeks damages. Since the record contains disputed facts as to whether the New Jersey Consumer Fraud Act (CFA) was violated and if the doctrine of avoidable consequences is triggered, partial summary judgment in favor of TMS will not be granted.

## I.  BACKGROUND

Since 1903, Inc., formerly known as EP Henry Corporation (EP Henry),[1] was a manufacturer of concrete products, including pavers, headquartered in Woodbury, New Jersey. (ECF No. 86–3 (Def.'s SOMF) ¶ 2; Pl.'s Resp. to Def.'s SOMF ¶ 2.) "EP Henry almost exclusively sold its pavers to distributors" who then "sold the pavers to installers or property owners." (ECF No. 90–2 (Pl.'s CSMF) ¶ 1.) TMS International, LLC (TMS) sold EAF slag to EP Henry from

---

[1] EP Henry changed its corporate name to Since 1903, Inc. in June 2021, when it sold its assets to another company. (ECF No. 90–1 (Pl.'s Resp. to Def.'s SOMF) p. 1 n. 1; Opp'n Br. p. 8.) As the events in question largely occurred prior to this date, I will refer to plaintiff as EP Henry throughout this opinion.

October 2017 to August 2020.   (Def.'s SOMF ¶ 7; Pl.'s Resp. to Def.'s SOMF ¶ 7.) Slag is a by-product of the steel making process, used in a number of applications, including road construction and agriculture.  (Def.'s SOMF ¶¶ 12–13; Pl.'s Resp. to Def.'s SOMF ¶¶ 12–13.)   EP Henry states that "[p]rior to the [f]all of 2017, all of EP Henry's pavers were manufactured using natural stone as coarse aggregate."  (Pl.'s CSMF ¶ 3.)   But TMS notes that the evidence cited "do[es] not indicate that the aggregate used in the history of EP Henry up to the [f]all of 2017 was natural stone."   (ECF No. 92–1 (Def.'s Resp. to Pl.'s CSMF) ¶ 3.)

On December 21, 2016, Michael Moore, TMS's general manager of aggregate product and sales, contacted John Ravelli, EP Henry's vice president of manufacturing, to propose the idea of testing EAF slag as an aggregate for concrete pavers.   (Def.'s SOMF ¶¶ 14–16; Pl.'s Resp. to Def.'s SOMF ¶¶ 14–16.) At that time, EP Henry had not previously used EAF slag as an aggregate in its pavers. (Pl.'s CSMF ¶ 29.)   Over the following months, the parties discussed the potential use of EAF slag, and TMS provided EP Henry with free EAF slag for testing.   (Def.'s SOMF ¶¶ 21–22, 33–34; Pl.'s Resp. to Def.'s SOMF ¶¶ 21–22.)

Solidia Technologies (Solidia) was involved in the testing and evaluation process.   Prior to his role at TMS, Moore worked for Solidia, and Solidia and EP Henry had an existing relationship around cement materials and technology.   (Def.'s SOMF ¶¶ 14, 25–32; Pl.'s Resp. to Def.'s SOMF ¶¶ 14; 25– 32.)   Solidia tested pavers to determine whether EAF slag would be a good fit for EP Henry pavers.   (Def.'s SOMF ¶ 43; Pl.'s Resp. to Def.'s SOMF ¶ 43.) Pennoni Associates was contracted to conduct tests on the EAF slag pavers. (Pl.'s CSMF ¶ 9.)

EP Henry began purchasing EAF slag from TMS in October 2017.   (Pl.'s CSMF ¶ 23; Def.'s Resp. to Pl.'s CSMF ¶ 23.)   Although the parties did not

2

execute a purchase order or contract, EP Henry purchased more than 1,000 truckloads of EAF slag from TMS.   (Def.'s SOMF ¶¶7, 54; Pl.'s Resp. to Def.'s SOMF ¶¶7, 54.)   In November 2017, EP Henry started full-scale manufacturing of pavers containing TMS's EAF slag.   (Pl.'s CSMF ¶35; Def.'s Resp. to Pl.'s CSMF ¶35.)

EP Henry received its first customer complaint about popouts in pavers in March 2019.   (Def.'s SOMF ¶56; Pl.'s Resp. to Def.'s SOMF ¶56.)   A popout is "a small, somewhat circular indentation in a paver that may be a couple of millimeters deep, and potentially two to three times the depth in terms of diameter."   (Def.'s SOMF ¶10; Pl.'s Resp. to Def.'s SOMF ¶10.)   EP Henry continued to receive complaints through 2020, and complaints increased in the summer of 2020.   (Pl.'s CSMF ¶37; Def.'s Resp. to Pl.'s CSMF ¶37.)   EP Henry retained Wiss, Janney, Elstner Associates, which issued a report concluding that expansion of quick lime in TMS's EAF slag was the cause of the popouts in the pavers.   (Pl.'s CSMF ¶¶38–39; Def.'s Resp. to Pl.'s CSMF ¶¶38–39.)   In August and September 2020, EP Henry's president, Eric Long, advised Moore that WJE blamed TMS's EAF slag as the cause of the popouts.   (Def.'s SOMF ¶60; Pl.'s Resp. to Def.'s SOMF ¶60.)   According to EP Henry's business records, it received 8 to 9% of customer complaints before August 19, 2020, of which 80% related to pavers installed before August 19, 2020.   (Pl.'s CSMF ¶¶47, 49.)

EP Henry stopped buying EAF slag but did not recall the pavers in the field that had not yet been installed.   (Def.'s SOMF ¶61.)   According to TMS, "EP Henry never communicated the known problem to their distributors or contractors in general."   (Def.'s SOMF ¶¶62, 63.)   TMS argues that EP Henry failed to recall the pavers because they were popular, it was during the COVID-19 pandemic, and EP Henry was experiencing "one of the highest years."   (*Id.* ¶61.)   EP Henry disputes this characterization, explaining that recalling the

3

pavers would have resulted in more customer complaints, actual litigation or threats thereof, and higher costs and losses.   (Pl.'s Resp. to Def.'s SOMF ¶ 61.) But EP Henry states that "[t]he salesperson designated to an individual distributor would" inform the "distributors there could be a problem."   (Pl.'s Resp. to Def.'s SOMF ¶ 62.)   Pavers containing EAF slag continued to be installed in the field, but EP Henry maintains it "already had sold, and no longer had custody and control over, any pavers containing EAF slag that were subsequently installed at end customer's homes or properties on or after August 19, 2020."   (Def.'s SOMF ¶ 64; Pl.'s Resp. to Def.'s SOMF ¶¶ 64, 66.)   EP Henry "sought to replace defective pavers or sometimes entire installations that were affected by the popout problem" and "alternatively … provided credit memos to distributors and contractors."   (Def.'s SOMF ¶ 65; Pl.'s Resp. to Def.'s SOMF ¶ 65.)   TMS argues this "include[d] jobs that were installed after EP Henry drew its conclusion concerning the EAF slag, from August 2020 well into 2021." (Def.'s SOMF ¶ 66.)   "Engineers and forensic accountants retained on behalf of TMS" expressed their opinions that "17.5% of the installations at issue in this litigation occurred after August of 2020 and the payments made by EP Henry relating to those installations amount to roughly one-third of its total damages claims."   (Def.'s SOMF ¶ 67.)

While Long claims that between 2019 and 2024, EP Henry addressed all of the customer complaints about the popouts, TMS argues that there is no evidence of this.   (Pl.'s CSMF ¶ 50; Def.'s Resp. to Pl.'s CSMF ¶ 50.)   EP Henry claims to have suffered over $9.6 million in damages between 2019 and 2024, but TMS disputes the amount and additionally argues that EP Henry failed to take action to avoid consequences after learning of the alleged problem with the pavers.   (Pl.'s CSMF ¶ 51; Def.'s Resp. to Pl.'s CSMF ¶ 51.)

### A.   Procedural History

This action commenced on January 3, 2022.   (ECF No. 1.)   The following counts were brought against TMS and TMS International Corporation: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) breach of implied warranty of fitness for a particular purpose; (4) negligent misrepresentation; and (5) violation of the CFA.   (*Id.* pp. 18–31.)   TMS answered the complaint on January 25, 2022. (ECF No. 6 (Ans.))   On February 7, 2022, EP Henry voluntarily dismissed the claims against TMS International Corporation.   (ECF No. 11.)   Discovery closed on November 25, 2025.   (ECF No. 85.)

On December 19, 2025, TMS filed a motion for partial summary judgment (Motion).   (ECF No. 86.)   TMS submits that (1) judgment should be entered in its favor dismissing the CFA claim; and (2) any damages claimed by EP Henry should be limited to those arising from customer installations on or before August 19, 2020.   (ECF No. 86–2 (Mot. Br.) p. 19.)   EP Henry filed an opposition to the Motion (ECF No. 90 (Opp'n Br.)), in response to which TMS filed a reply (ECF No. 92 (Reply Br.)).

## II.   LEGAL STANDARD

Under Rule 56(c), summary judgment is appropriate if the moving party demonstrates there are no genuine issues of material fact, and the materials in the record establish the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see also* Fed. R. Civ. P. 56(c)(1)(A) (providing that "materials in the record" include depositions, documents, electronically stored information, affidavits or declarations, admissions, interrogatory answers, or "other" materials).   A factual dispute is "genuine" if a reasonable trier of fact could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A fact is

"material" if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.*

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247–48. The Court "may not make credibility determinations or engage in any weighing of the evidence" in deciding a summary judgment motion. *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson,* 477 U.S. at 255). "[I]nstead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Id.*

The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. "When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable [trier of fact] could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1439 (11th Cir. 1991)).

Once the moving party meets its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The opposing party must present "more than a scintilla of evidence showing that there is a genuine issue." *Colburn v. Upper Darby Township,* 946 F.2d 1017, 1020 (3d Cir. 1991). "[S]imply show[ing] that there is some metaphysical doubt as to the material fact" will not defeat summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party cannot rest on mere allegations. *Siegel Transfer, Inc. v. Carrier Express,*

6

*Inc.*, 54 F.3d 1125, 1130–31 (3d Cir. 1995).   Rather, summary judgment is properly denied where the opposing party "has created a genuine issue of material fact … [by] provid[ing] sufficient evidence to allow a [trier of fact] to find in its favor at trial."   *Gleason v. Norwest Mortg. Inc.*, 243 F.3d 130, 138 (3d Cir. 2001); *see also* Fed. R. Civ. P. 56(e) (requiring the non-moving party to "set out specific facts showing a genuine issue for trial").

### III.  DISCUSSION

#### A.   <u>CFA</u>

The CFA "seeks to protect consumers who purchase 'goods or services generally sold to the public at large.'"   *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) (quoting *Marascio v. Campanella*, 689 A.2d 852, 857 (N.J. Super. Ct. App. Div. 1997)).   "To state a CFA claim, a plaintiff must allege '(1) unlawful conduct; (2) ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss.'"   *Marshall v. Verde Energy USA, Inc.*, No. 18–01344, 2019 WL 1254562, at *3 (D.N.J. Mar. 19, 2019) (quoting *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1086 (N.J. 2007)).   Unlawful conduct is defined as any unconscionable commercial practice, "deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission."   N.J. Stat. Ann. 56:8-2.

The CFA "is intended to protect consumers by eliminating sharp practices and dealings in the marketing of merchandise and real estate."   *Cetel*, 460 F.3d at 514 (quoting *Lemelledo v. Beneficial Management Corp.*, 696 A.2d 546, 554 (N.J. 1997)).   "[T]he entire thrust of the [CFA] is pointed to products and services sold to consumers in the popular sense."   *Id.* (quoting *Arc Networks, Inc. v. Gold Phone Card Co., Inc.*, 756 A.2d 636, 638 (N.J. Super. Ct. L. Div. 2000)).   "Thus, the CFA 'is not intended to cover every transaction that occurs

in the marketplace[,]' but, rather, '[i]ts applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself.'"   *Id.* (alterations in original) (quoting *Arc Networks, Inc.*, 756 A.2d at 638)).

"The term 'merchandise' … include[s] any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale."   *Unimed Intl. Inc. v. Fox News Network, LLC*, No. 24–02987, 2025 WL 3172766, at \*2 (3d Cir. Nov. 13, 2025) (quoting N.J. Stat. Ann. §56:8-1(c)).   The parties agree EP Henry's purchases of EAF slag from TMS were "business-to-business transaction[s]," (Mot. Br. p.11; Opp'n Br. p.17), so I must assess the four factors set out in *All the Way Towing, LLC v. Bucks Cnty. Int'l, Inc.*, 200 A.3d 398, 408 (N.J. 2019), to determine whether EAF slag is "merchandise," such that CFA applies.   Those factors are:

> (1) the complexity of the transaction, taking into account any negotiation, bidding, or request for proposals process; (2) the identity and sophistication of the parties, which includes whether the parties received legal or expert assistance in the development or execution of the transaction; (3) the nature of the relationship between the parties and whether there was any relevant underlying understanding or prior transactions between the parties; and … (4) the public availability of the subject merchandise.

*Id.* at 408.

### 1.  Complexity of the Transactions

TMS argues that its transactions with EP Henry were complex because: (1) they were preceded by discussions, during which "EP Henry utilized a combination of external tests, including those offered by TMS and multiple internal testing laboratories"; (2) "TMS provided multiple truckloads of samples"; and (3) an agreement was reached "only after … extensive negotiations resolved disagreements about a range of technical and aesthetic matters."   (Mot. Br. pp.12, 13 (citing *Princeton Healthcare Sys v. Netsmart*

*New York, Inc.*, 29 A.3d 361, 365 (N.J. Super. Ct. App. Div. 2011) (holding that a contract for a complex computer system did "not constitute a 'sale of merchandise' within the intent of the CFA" because it involved "more than two-year process of evaluation of proposals," "a custom-made design program," and assistance from a "computer consultant and legal counsel.")).)

EP Henry counters that because "TMS has presented no actual evidence that the parties 'negotiated' anything" the transactions were not complex. (Opp'n Br. p. 19.) EP Henry notes that "[t]here was no bidding or request for proposal process," and "EP Henry and TMS did not enter into any sales or supply contract." (*Id.* pp. 20, 25 (citing *CDK Glob., LLC v. Tulley Auto. Group, Inc*, 489 F. Supp. 3d 282, 309–310 (D.N.J. 2020) (finding material factual disputes as to whether the transaction was complex because negotiations lasted only several months rather than years and no legal advice was sought for the standard form contract)).)

There is thus a dispute regarding the complexity of the transactions.

### 2. The Sophistication of the Parties

TMS asserts that both parties were sophisticated commercial entities. (Mot. Br. p. 14.) TMS first argues that EP Henry has "more specialized knowledge than the general public about concrete," and it is "in the business of manufacturing hardscape and masonry products … for over 120 years." (*Id.* pp. 14–15.) Next, TMS argues that EP Henry "has long experience selecting concrete paver ingredients," and EP Henry relied on Solidia's and other external testing endorsing EAF slag use." (*Id.* p. 15.) Finally, TMS argues that "free slag was provided by TMS for EP Henry to test using its own expertise." (*Id.*)

Meanwhile, EP Henry argues that it "had no sophistication or experience with using EAF slag as coarse aggregate in concrete pavers." (Opp'n Br. p. 25.) EP Henry points to its reliance "on TMS to furnish material that was suitable

9

for EP Henry's needs," and Moore's "background in concrete and cement."   (*Id.* pp. 28–29.)

"Even the most world-wise business entity can be inexperienced and uninformed in a given consumer transaction."   *CDK Glob., LLC*, 489 F. Supp. 3d at 309 (quoting *Hundred East Credit Corp. v. Eric Schuster Corp.*, 515 A.2d 246, 249 (N.J. Super. Ct. App. Div. 1986)).   I find EP Henry has presented enough evidence to dispute its sophistication regarding EAF slag. Accordingly, I will not resolve this factor at summary judgment.

### 3.   Nature of the Relationship

Both parties agree "EP Henry and TMS had no prior relationship and had engaged in no transactions which could form the basis for an underlying understanding before they engaged in the sales transactions at issue in this case."   (Opp'n Br. p. 29; Mot. Br. p. 16.)

### 4.   Availability to the Public

"Courts have found that products suited to the needs of a limited clientele base can still be considered goods that are available to the 'public at large.'" *CDK Glob., LLC*, 489 F. Supp. 3d at 310 (quoting *Prescription Counter v. AmerisourceBergen Corp.*, No. 04–05802, 2007 WL 3511301, at *16 (D.N.J. Nov. 14, 2007)); *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 509 (D.N.J. 1999)).   "[I]t is irrelevant that the 'public at large' does not purchase [the product]," but instead "[t]he relevant point is that a member of the public so inclined could purchase" the product.   *All the Way Towing, LLC*, 200 A.3d at 408.

TMS asserts that "the transactions were not available to the general public." (Mot. Br. p. 16.)   TMS argues that "EAF slag transactions were customized industrial purchases not available to an individual consumer," and "no evidence suggests that TMS actually sells EAF slag to the public."   (*Id.* pp. 17, 18)   In opposition, EP Henry argues that EAF slag is sold to the public,

and that "evidence shows that a 'member of the public so inclined could purchase' EAF slag."   (Opp'n Br. p. 30.)

The record does not conclusively establish whether EAF slag was available for purchase by the public at large.   Accordingly, this factor weighs against summary judgment.   Since issues of fact exist as to the *All the Way Towing* factors, the Motion will be denied as to the CFA claim.

### B.   Avoidable Consequences

TMS also seeks summary judgment as to EP Henry's damages under the doctrine of avoidable consequences.   TMS argues that EP Henry cannot recover for damages arising from installations occurring after August 19, 2020. (Mot. Br. pp. 18, 19.)

The duty to mitigate, or the doctrine of avoidable consequences, establishes "that injured parties have a duty to take reasonable steps to mitigate damages."   *Ingraham v. Trowbridge Builders*, 687 A.2d 785, 790 (N.J. Super. Ct. App. Div. 1997) (quoting *McDonald v. Mianecki*, 398 A.2d 1283, 1295 (N.J. 1979)).   "Where the defendant has already committed an actionable wrong … then this doctrine limits the plaintiff's recovery by disallowing only those items of damages which could reasonably have been averted."   *Ostrowski v. Azzara*, 545 A.2d 148, 154 (N.J. 1988) (quoting *Southport Transit Co. v. Avonale Marine Ways, Inc.*, 234 F.2d 947, 952 (5th Cir. 1956)).

The breaching party bears the burden to prove mitigation, and "[w]hether the injured party made reasonable efforts to mitigate … damages is a question of fact."   *United Cent. Bank v. Bhavani Fruit and Vegetable LLC*, No. A–0837–14T3, 2016 WL 715660, at *4 (N.J. Super. Ct. App. Div. Feb. 24, 2016).   "The reasonableness of the plaintiff's actions is measured by a subjective standard." *Grubbs v. Knoll*, 870 A.2d 713, 723 (N.J. Super. Ct. App. Div. 2005).   Where the reasonableness of the plaintiff's actions is disputed, courts leave the question of avoidable damages to the jury.   *See, e.g., OFI Int'l, Inc. v. Port*

11

*Newark Refrigerated Warehouse*, No. 11–06376, 2015 WL 140134, at *9 (D.N.J. Jan. 12, 2015) (denying summary judgment where "[p]laintiffs waited until after the shelf life had expired," but other evidence indicated "[d]efendant hindered … mitigation efforts."); *Health Pros. & Allied Emps., AFT, AFL-CIO, Loc. 5091 v. Bergen Regl. Med. Ctr., L.P.*, No. 08–01031, 2010 WL 147938, at *4 (D.N.J. Jan. 8, 2010) (finding "a genuine issue of fact arises concerning the scope of the duty to mitigate and the level of compliance exercised and/or required in fulfillment of that duty.").

On August 19, 2020, EP Henry attributed TMS's EAF slag as the cause of the popouts in the pavers.    (Def.'s SOMF ¶ 60; Pl.'s Resp. to Def.'s SOMF ¶ 60.) TMS argues that "EP Henry allowed subsequent installations to occur despite being the only party with the ability to 'stop the bleeding.'"    (Reply Br. p. 15.) But EP Henry notes that although the pavers were not recalled, it stopped purchasing, using and selling EAF slag, quarantined the use of EAF slag in its possession, complied with requested replacements of EAF slag pavers, and addressed customer complaints.    (Pl.'s CSMF ¶ 41; Def.'s SOMF ¶ 61.)    EP Henry argues that it "no longer had custody or control over, any pavers containing EAF slag that were subsequently installed at end customer's homes or properties on or after August 19, 2020."    (*Id.* ¶ 44.)

Accordingly, a trier of fact should assess whether EP Henry's actions in mitigation of its damages were reasonable. The aspect of the Motion concerning avoidable consequences will also be denied.

12

## IV.    CONCLUSION

For the foregoing reasons, the Motion will be **DENIED**.    An appropriate order accompanies this opinion.

 */s/ Edward S. Kiel*      
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated: May 11, 2026